| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS:**<br>MARILYN GARNER Chapter 7 Trustee of the Bankruptcy Estate of Superior Lubricants Transport Inc. | **DEFENDANTS:**<br>AET HOLDINGS, LLC, AMERICAN ENERGY TRANSPORT, LLC, SHANALI N. BHAGAT a/k/a SHAWN BHAGAT |
| **ATTORNEYS:** (Firm Name, Address and Telephone No.)<br>CAVAZOS HENDRICKS POIROT P.C.<br>Suite 570, Founders Square<br>900 Jackson Street<br>Dallas, TX 75202<br>Phone: (214) 573-7300 | **ATTORNEYS:** (If Known) |
| **PARTY:** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/<br>☐ Creditor   Bankruptcy Admin<br>☒ Trustee ☐ Other | **PARTY:** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/<br>☐ Creditor   Bankruptcy Admin<br>☐ Trustee ☒ Other |

**CAUSE OF ACTION:** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Breach of Contract, Fraud, Unjust Enrichment and Conversion Claims

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection/revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce/sep property settlement/decree
☐ 65-Dischargeability – other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory Judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

Other:
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand: $700,000.00 plus fees and costs |

Other Relief Sought:

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR:** Superior Lubricants Transport Inc. | **BANKRUPTCY CASE NO.:** 16-42146 | |
| DISTRICT IN WHICH CASE IS PENDING: Northern District of Texas | DIVISIONAL OFFICE: Ft. Worth | NAME OF JUDGE: Russell F. Nelms |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF: MARILYN GARNER Chapter 7 Trustee of the Bankruptcy Estate of Superior Lubricants Transport Inc. | DEFENDANT: JGOODEN, LLC and JERRI A. GOODEN, individually | ADVERSARY PROCEEDING NO.: 16-04143 |
| DISTRICT IN WHICH ADVERSARY IS PENDING: Northern District of Texas | DIVISIONAL OFFICE Ft. Worth | NAME OF JUDGE: Russell F. Nelms |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) /s/ Lyndel Anne Vargas | | |
| DATE: 06/01/2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Lyndel Anne Vargas | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

Lyndel Anne Vargas
State Bar No. 24058913
CAVAZOS HENDRICKS POIROT, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX  75202
Direct Dial: (214) 573-7344
Fax: (214) 573-7399
Email: LVargas@chfirm.com

Attorneys for Marilyn Garner, Plaintiff /Chapter 7 Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>SUPERIOR LUBRICANTS TRANSPORT INC. *a/k/a* Superior Transport,<br><br>    Debtor. | Case No. 16-42146-rfn-7 |
| MARILYN GARNER, Chapter 7 Trustee of the Bankruptcy Estate of Superior Lubricants Transport Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>AET HOLDINGS, LLC; AMERICAN ENERGY TRANSPORT, LLC; and SHANALI N. BHAGAT a/k/a SHAWN BHAGAT, jointly & severally,<br><br>    Defendants. | ADVERSARY NO. _____ |

## **TRUSTEE'S ORIGINAL COMPLAINT**

COMES NOW Marilyn Garner, duly-appointed Chapter 7 Trustee (the "Trustee") of the Bankruptcy Estate (the "Estate") of Superior Lubricants Transport, Inc. ("Superior" or the "Debtor"), and files her **Original Complaint** (the "Complaint") related to breach of contract,

**Trustee's Original Complaint**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page 1 of 16**

fraud, fraud by nondisclosure, conversion, and unjust enrichment in support of which the Trustee would respectfully show the following:

## I.
## JURISDICTION AND VENUE

1. This Complaint is an adversary proceeding brought pursuant to Rule 7001, Federal Rules of Bankruptcy Procedure, and 11 U.S.C. § 542.

2. This adversary proceeding relates to the above-captioned bankruptcy estate of Superior Lubricants Transport, Inc. This Court has jurisdiction over this matter under 28 U.S.C. § 157 and 28 U.S.C. § 1334. Venue is proper in this Court under 28 U.S.C. § 1409.

3. The Trustee consents to entry of final orders or judgment by the Bankruptcy Court in this adversary proceeding.

## II.
## PARTIES

4. The Trustee, Marilyn Garner, serves as the Chapter 7 Bankruptcy Trustee of the Estate of Superior Lubricants Transport, Inc. ("Superior" or the "Debtor") and is the Plaintiff in this adversary proceeding.

5. Defendant AET Holdings, LLC, ("AET Holdings") is a Texas corporation residing in Dallas County, Texas and may be served through its registered agent, Shanali N. Bhagat at 2415 W. Northwest Highway, Ste. 105, Dallas, Texas 75220.

6. Defendant, American Energy Transport, LLC ("AET LLC") is a Texas limited liability company which may be served through its registered agent, Shanali N. Bhagat at 2415 W. Northwest Highway, Ste. 105, Dallas, Texas 75220. AET LLC is an affiliate of AET Holdings.

7. Shanali N. Bhagat a/k/a Shawn Bhagat is an individual domiciled in Texas who resides and may be served at 652 Timbercrest Cir., Lewisville, TX 75077. Shawn Bhagat previously or currently exercises control over AET Holdings and AET LLC.

8. Nafisa S. Bhagat an individual domiciled in Texas who resides and may be served at 652 Timbercrest Cir., Lewisville, TX 75077. Upon information and belief, Ms. Bhagat is the spouse of Mr. Bhagat.

9. Collectively, all parties stated herein are referred to as "Parties." All defendants listed above are referred to collectively as "Defendants."

## III.
## BACKGROUND

10. On October 21, 2015, Superior and AET Holdings (the "parties") entered into an Asset Purchase Agreement (the "APA" or the "Agreement"), attached hereto as **Exhibit "A"** and incorporated by reference herein, whereby AET Holdings agreed to purchase substantially all of Superior's assets. The APA was signed by Alykhan Bhagat, the manager of AET Holdings.

11. Under the APA, Superior agreed to sell all of its trailers and trucks—along with its current customer contracts, trade names, websites, customer lists and phone numbers—to AET.

12. For its part, AET agreed to pay $300,000.00 on November 15, 2015 to Superior, the date on which the Agreement was intended to close. AET also agreed to pay $355,000.00 to Superior, payable in 48 equal installments beginning December 15, 2015, as well as $50,000.00 with interest thereon due one year after closing. The total purchase price that AET agreed to pay Superior was $705,000.00 (the "Purchase Price").

13. The APA established a short time frame for completing the sale:

> 1.2 <u>Closing</u>. The parties agree to use their best efforts to consummate this transaction ("Closing") on or before November 15, 2015 (the "Closing Date") unless modified by written agreement of both parties. The Closing shall occur at

the offices of Moses, Palmer & Howell, 309 West 7th Street, Suite 815, Fort Worth, Texas 76102.

14. The APA included two sections discussing the conditions whereby AET Holding's obligation to purchase Superior's assets would be triggered as well as conditions whereby Superior's obligation to sell the assets would be triggered. Upon information and belief, all the conditions triggering the obligations of AET Holdings as purchaser were satisfied in November or December of 2015 and Superior was ready, willing and able to close.

15. Consistent with its obligations in the APA, Superior made arrangements to transfer its customer contracts to AET Holdings for servicing in late October or early November of 2015.

16. On November 15, AET Holdings failed to transfer $300,000.00 as required by the APA. Upon information and belief, AET Holdings did not complete the sale on November 30, 2015 because it did not have adequate funds to do so. However, it continued to represent to Superior that it did have the funds and would soon perform on its obligations.

17. Superior and AET Holdings then entered into an Equipment Lease Agreement (the "Equipment Lease") that became effective December 1, 2015, attached hereto as **Exhibit "B"** and incorporated by reference herein. The parties reaffirmed in the Equipment Lease that they "anticipated that [AET Holdings would] purchase substantially all of the assets of Superior." Ex. B, at 1.

18. The Equipment Lease provided, *inter alia*, that (1) Superior would allow AET Holdings to use some of Superior's equipment to service Superior's customers in anticipation of the APA's closing; (2) AET Holdings would pay all wages due to the drivers operating such equipment; (3) AET Holdings would pay for the insurance on such equipment; and (4) Superior would pay to AET Holdings all sums it received for the services AET Holdings provided to Superior's customers.

19. Shawn Bhagat signed the Equipment Lease on behalf of AET Holdings as its Chief Executive Officer. After the Equipment Lease was signed and went into effect, Superior transferred possession of the equipment described in the lease to AET Holdings, along with all account information and permission to do the work under some of its most valuable contracts, including an Exclusive Fuel Transport Agreement with Susser Petroleum Company LLC ("Susser").

20. During December of 2015, AET Holdings serviced some or all of the contracts that were transferred from Superior pursuant to the APA and Equipment Lease.

21. On January 11, 2016, the Equipment Lease was amended (the "Amended Equipment Lease") to add AET LLC as an additional lessee, together with AET Holdings (AET LLC and AET Holdings referred to together as "AET").

22. After AET Holdings failed to perform on its obligations under the APA through December of 2015, AET continued to delay closing the sale of Superior's assets through April of 2016, even though Superior had completed all of its obligations under the APA and the Amended Equipment Lease.

23. AET did not close because it did not have the funds to complete the sale, despite the fact that AET Holdings originally represented it could have $300,000.00 available by November 15, 2015.

24. AET eventually claimed that it would not close the sale, in part, because Susser allegedly would not recognize the assignment of its contract from Superior to AET. As Susser's acceptance or recognition of the assignment of its contract was not a condition precedent to AET's obligation to purchase Superior's assets, AET was still bound to proceed with the purchase under the APA.

25. The only condition precedent in the APA that governed the assignment of

Susser's contract provided the following:

> 6.3 Purchaser shall have received an Assignment and Assumption Agreement covering the Assumed Liabilities and the Customer Contract, in the form and content as the Assignment and Assumption Agreement attached hereto as Exhibit H and made a part hereof ("Assignment").

26. Superior and AET did execute an Assignment and Assumption Agreement that covered Susser's customer contract, and Superior informed Susser of the assignment on December 9, 2015.

27. The APA did not require that Susser accept or acknowledge the assignment itself before AET Holding's obligation to purchase Superior's assets. Rather, the APA specifically provided that the only remedy of AET Holdings for Susser's failure to perform its contractual obligations was that AET Holding's post-closing installment payments would be reduced. The APA provided that if Susser failed to honor its customer contract for any reason, other than AET Holding's own negligence, then AET Holding's monthly payment of $8,015,56 would be reduced to $3,015.56 during the time of Susser's non-performance.

28. AET Holdings and/or AET LLC took possession and control of all of Superior's property identified in the APA, subject to the rights of any third-party lienholders as provided by paragraph 6.4 of the Agreement. Superior was ready willing and able to pay the lien obligations on the trailers from the $300,000.00 AET Holdings was required to tender pursuant to the APA. However, AET Holdings never tendered any of the Purchase Price to Superior as required by the APA.

29. Consistent with this fact, after AET took possession of Superior's trucks, trailers, contracts and customer information, AET failed to make lease payments and yet continued to service Superior's customers for its own benefit.

30. Furthermore, after taking possession of Superior's trucks and trailers, AET incurred significant storage fees on Superior's account by storing such trailers at a PACCAR

facility without paying for such storage. The storage fees incurred by AET were then charged against Superior and resulted in Superior and its Estate being liable to PACCAR Financial Corp. d/b/a PACCAR Leasing Company in the 17th Judicial District Court of Tarrant County, Texas.

31. Superior was unable to pay its debts as they came due in significant part due to Defendant's breach of the APA and lease agreements. As a consequence, on June 2, 2016 Superior filed its voluntary petition under Chapter 7 of the Bankruptcy Code. The Trustee was appointed to administer the assets of this bankruptcy estate, including Superior's claims against the Defendants.

32. About June of 2016, the Trustee is informed and believes that AET Holdings sold its business to a company called Texas TransEastern, Inc.

33. At the time of the sale, the customer contacts and contract information in the possession of Mr. Bhagat and AET Holdings, which were assets of Superior, moved to the new business and Defendants received consideration from Texas TransEastern, Inc., some of which was attributable to the assets of Superior. Such assets included Superior's contracts, customer lists, intellectual property, and other property that had been transferred to AET Holdings in anticipation of its closing under the APA.

34. Additionally, AET, or its purchaser, incurred debts in the name of Superior by abandoning trailers of Superior in storage with PACCAR without paying for such storage.

35. The Trustee is informed and believes that Mrs. Bhagat worked in concert with or knowingly benefitted from the conversion of Superior's property and the representation of its assets as property of AET Holdings.

36. The Trustee is informed and believes that Mr. and Mrs. Bhagat have received distributions, benefits, and/or other payments as a result of such conversion and

misrepresentations in the sale or transfer of AET's business to Texas TransEastern.

## IV.
## BREACH OF APA CONTRACT

37. The Trustee incorporates and realleges the allegations set forth in the preceding, numbered paragraphs.

38. Superior performed all its obligations under the APA, which was a valid contract for mutual consideration executed by both Superior and AET Holdings. AET Holdings accepted and benefitted from Superior's performance.

39. AET Holdings breached the APA by failing to tender $300,000.00 either on the original date of closing, November 15, 2015, or on a date agreed upon by the parties thereafter. This breach excused Superior from paying off the liens on the trailers being transferred to AET.

40. AET Holdings also breached the APA by failing to pay the Note payments for the $355,000.00 and the interest of $50,000.00 for the balance of the agreed purchase price of $705,000.00 in accordance with § 1.1 of the APA.

41. AET Holdings also breached the APA by not using its "best efforts" to consummate the sale.

42. While AET Holdings was engaged in these breaches, Superior was deprived of its equipment and thus both the right and ability to service its valuable contracts. As a result of the many breaches by AET Holdings, Superior and eventually the Estate sustained severe financial damages of at least $705,000.00.

43. Under Texas law, to recover for breach of contract, a plaintiff must prove (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff; (3) breach by the defendant, and (4) harm to the plaintiff as a result of the breach. *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 813 (S.D. Tex. 2013)

44. AET Holdings and any successor of its business are jointly and severally liable

for these bad acts.

45. The Estate is entitled to any and all compensatory damages flowing from AET's breach of contract.

## V.
## FRAUD BY AET HOLDINGS

46. The Trustee incorporates and realleges the allegations of the preceding numbered paragraphs.

47. During the course of negotiations between the parties regarding the APA and its closing, AET Holdings misrepresented to Superior that AET had sufficient funds to properly close the sale of Superior's assets or would have such funds within the timeframe originally contemplated by the parties when they signed the APA, in order to induce Superior to rely upon such representations and transfer its business and equipment to AET Holdings.

48. During these negotiations, AET Holdings also misrepresented to Superior that it would, in fact, close the sale within the time frame originally contemplated by the parties when they signed the APA.

49. Upon information and belief, AET Holdings knew these representations were false or made the representations recklessly without knowledge of their truth.

50. Superior's principals reasonably relied on these misrepresentations to its detriment. Had Superior not been deceived as to the ability of AET Holdings to perform on its payment obligations, it would not have turned over its valuable contracts, customer lists and equipment to AET Holdings, and may have either serviced such contracts itself or sold them in connection with its business goodwill to another buyer.

51. Under Texas law, the elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;

(4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Langlois v. Wells Fargo Bank Nat'l Ass'n*, 581 F. App'x 421, 427 (5th Cir. 2014).

52. Due to the fraud of AET Holdings, the Debtor is entitled to any and all compensatory damages flowing from its reliance on AET Holdings' misrepresentations.

53. Additionally, any successor to the business of AET Holdings, is jointly and severally liable for AET Holdings bad acts.

## VI.
## FRAUD BY NONDISCLOSURE BY AET HOLDINGS

54. The Trustee incorporates and realleges the allegations of the preceding numbered paragraphs.

55. In the alternative, AET Holdings concealed from the Debtor, or failed to disclose to the Debtor, AET Holding's own financial condition and intent not to close on the Agreement within a reasonable time.

56. Upon information and belief, AET Holdings made partial disclosures about such facts, and thus had a duty to disclose the whole truth to the Debtor.

57. Upon information and belief, AET Holdings alternatively discovered information after the signing of the APA that made its early representations relating to the APA misleading or untrue, and thus AET Holdings had a duty to disclose the whole truth to the Debtor.

58. Upon information and belief, AET Holdings knew that the Debtor did not know such facts and did not have an equal opportunity to discover such facts.

59. The Debtor relied on AET Holdings' nondisclosure to its detriment.

60. The Trustee, as holder of all claims of the Debtor, is entitled to any and all compensatory damages flowing from its reliance on AET Holdings' nondisclosure.

61. Likewise, any successor in interest to the business of AET Holdings, Texas is

jointly and severally liable for these bad acts.

## VII.
## UNJUST ENRICHMENT BY AET

62. The Trustee incorporates and realleges the allegations of the preceding numbered paragraphs.

63. Alternatively, if the Asset Purchase Agreement was not properly consummated or AET Holdings' non-performance under the APA was somehow excused, AET Holdings nevertheless took possession of the Debtor's trucks, trailers, and other assets following the signing of the Equipment Lease, and AET Holdings and/or AET LLC used these assets to earn revenue for its own businesses.

64. Upon information and belief, the Superior leased and provided its equipment, customer information and valuable contracts to AET Holdings with the expectation that AET Holdings would close the APA shortly thereafter. Accordingly, the Equipment Lease and Amended Equipment Lease provided that: "This Lease shall expire on the earlier of the closing of the transaction contemplated by the Agreement [the APA] or five days' prior written notice of termination by [AET Holdings] or Superior.".

65. According to the Amended Equipment Lease, AET LLC became a party and also took possession of the Debtor's trucks, tractors, assets, customer lists and contracts throughout the lease term. Pursuant to its involvement, AET LLC likewise used these assets to earn revenue toward its own business and deprived the Superior of its use.

66. As an affiliate of AET Holdings, AET LLC worked in concert with AET Holdings and took undue advantage of the fraud and breach committed by AET Holdings.

67. It was inequitable for AET Holdings, AET LLC and their members to retain the revenues which they made using the Debtor's own equipment and contracts—beyond the time frame contemplated by the parties—without first providing restitution to the Estate for the value

of such use.

68. Under Texas law, a party may recover under the unjust enrichment theory when one person obtains a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

69. As set forth above, AET Holdings acquired the benefit of the Debtor's property by fraud, whereas AET LLC took undue advantage of the fraud and/or breach by AET Holdings to reap the benefit of the Debtor's property.

70. Additionally, AET enjoyed the benefit of a contract between Superior and PACCAR Financial Corp. d/b/a PACCAR Leasing Company ("PACCAR") for the storage of the Debtor's trucks and equipment. AET made use of such storage services without compensating the Superior, or directly paying PACCAR, while in breach of the APA, resulting in storage lien claims by PACCAR against Superior's property.

71. Any successor in interest to the business of AET Holdings, Texas is also jointly and severally liable for these bad acts as the use of Superior's assets assisted in the servicing of Superior's customers and the income derived therefrom

72. Superior and ultimately the creditors of this Estate have been damaged by the loss of the use and value of the Debtor's trucks, trailers, customer lists, contracts, and other property, as well as by the use of such assets by AET. The Trustee, as holder of all claims of the Debtor, is therefore entitled to recovery and reimbursement.

## VIII.
## CONVERSION BY AET HOLDINGS AND SHANALI N. BHAGAT

73. The Trustee incorporates and realleges the allegations of the preceding numbered paragraphs.

74. After wrongfully taking possession of Superior's property under the guise of promises to close the purchase under the APA and lease agreements, Mr. Bhagat then entered

into an agreement to sell the business of AET Holdings which reflected the value of Superior's assets and/or the assets themselves, including customer lists, contracts, and other property.

75. Pursuant to the Equipment Lease and Amended Equipment Lease, the trucks, trailers, and accounts of Superior were provided to AET Holdings in reliance on consummation of the APA. The only consideration provided was that AET Holdings would take up the insurance obligations and provide appropriate drivers. However, such arrangement was temporary and in contemplation of the imminent fulfillment of AET's obligations under the APA, as set forth by the express language of the equipment leases. Additionally, other property, including customer lists, was conveyed to AET Holdings on the good faith belief by Superior that payment under the APA was imminent.

76. Instead, the Trustee is informed and believes that Mr. Bhagat, trying to achieve the greatest distribution possible, failed to close on the APA but represented the assets of Superior as part of the value of his business when he sold the same.

77. By doing so, Mr. Bhagat and/or AET Holdings worked to convert the property of Superior for its own benefit.

78. Under Texas law, conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). To establish a claim for conversion, a plaintiff must prove that: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts*, 300 S.W.3d 348, 365-66 (Tex. App.—Dallas 2009).

79. Since the filing of the bankruptcy, the Trustee has sought the return of all assets of Superior received by AET Holdings, or remuneration for the value of such assets. However, AET Holdings and Mr. Bhagat have refused to turn over such property or their equivalent values. Further, Mr. Bhagat has represented that he sold AET Holdings, LLC.

80. Therefore, Mr. Bhagat and/or AET Holdings have engaged in conversion of the Debtor's assets and have been enriched, to the detriment of the Debtor's Estate. The Trustee therefore seeks recovery of either the losses incurred by Superior or the benefit received by Mr. Bhagat and/or AET Holdings.

81. As successor in interest pursuant to its merger with AET Holdings, Texas TransEastern, Inc. is jointly and severally liable for the bad acts of its predecessor.

## IX.
## UNJUST ENRICHMENT BY SHANALI AND NAFISA BHAGAT

82. The Trustee incorporates and realleges the allegations of the preceding numbered paragraphs.

83. Mr. Bhagat represented that he sold the business of AET Holdings after the failure to close on the APA.

84. The trailers, customer contracts and account information were retained however by AET.

85. In July of 2016 the Trustee learned from PACCAR that AET Holdings had stored 3 of Superior's trailers since April 2016 without paying storage fees and stored 2 other trailers since May without paying storage fees. The use and exclusive access to these trailers allowed Shanali and Nafisa Bhagat to receive a greater value for AET Holdings when they sold that business.

86. As a result of the sale, Mr. and Mrs. Bhagat received significant funds over and above the value that would have been realized had the business of AET Holdings been sold

without the benefit of the assets and accounts of Superior.

87. It is inequitable that Mr. and Mrs. Bhagat should reap the benefit after taking undue advantage of the Debtor and causing AET Holdings to engage in acts of fraud. Therefore, the Trustee seeks to recover the amounts received by Mr. and Mrs. Bhagat as a result of their unjust enrichment.

## X.
## ATTORNEY'S FEES

88. The Trustee incorporates and realleges the allegations of the preceding numbered paragraphs.

89. Pursuant to Texas Civil Practice and Remedies Code Section 38.001, the Trustee is entitled to recover all reasonable and necessary attorney's fees and costs of court.

90. Alternatively, pursuant to the paragraph 6 of the Equipment Lease, the Trustee is entitled to recover all reasonable and necessary attorney's fees incurred in connection with recovering possession of the Equipment subject to the Lease.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Trustee, Marilyn Garner respectfully prays that the Defendants be cited to appear and answer herein, and that upon final hearing, the Court render judgment for the Trustee against Defendants by awarding general, compensatory, and special damages; reasonable and necessary attorney's fees and costs; and all such other relief to which Trustee is justly entitled.

DATED this 1st day of June 2018.

>Respectfully submitted,
>
>/s/ Lyndel Anne Vargas
>Lyndel Anne Vargas
>TX Bar No. 24058913
>CAVAZOS HENDRICKS POIROT, P.C.
>Suite 570, Founders Square
>900 Jackson Street
>Dallas, TX  75202
>Phone: (214) 573-7300
>Fax: (214) 573-7399
>Email: LVargas@chfirm.com
>
>Attorneys for Marilyn Garner, Plaintiff / Chapter 7 Trustee